On appellant's reconsideration filed April 15, reconsideration allowed and former opinion (83 Or App 696, 732 P2d 961) adhered to June 24, reconsideration denied August 28, petition for review denied September 29, 1987 (304 Or 186)

## COOS COUNTY
*Respondent,*

*v.*

## OREGON DEPARTMENT OF FISH AND WILDLIFE,
*Appellant.*

(85-2143; CA A39972)

739 P2d 47

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Jerome Lidz, Assistant Attorney General, Salem, for petition.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This case involves a squabble between an agency of the State of Oregon (defendant) and Coos County (plaintiff). The dispute ultimately found its way to the courts when plaintiff brought this declaratory judgment action under the Public Records Law, ORS 192.410 to 192.500, for an order requiring defendant to disclose individual responses that it had received on a questionnaire it had sent to its fish and wildlife biologists. The questionnaire asked the biologists to rate the effectiveness of the Forest Practices Act, ORS 527.610 to 527.730, in protecting fish habitat and wildlife on private timber land. The trial court viewed the documents *in camera* after both parties moved for summary judgment and held that the responses were subject to disclosure. In *Coos County v. Ore. Dept. of Fish and Wildlife,* 83 Or App 696, 732 P2d 961 (1987), we affirmed without opinion. We allow defendant's petition for reconsideration, but we adhere to our former decision.

■ Defendant contends that the biologists' responses are exempt from disclosure[1] under ORS 192.500(2)(a),[2] which exempts from disclosure communications within a public body that are advisory in nature, preliminary to any final agency action, and cover other than purely factual matters if, in the particular instance, the public interest in encouraging frank communication clearly outweighs the public interest in disclosure. *Bay Area Health District v. Griffin,* 73 Or App 294, 698 P2d 977 (1985). If a public record contains material which is not exempt, as well as material which is exempt, it is the duty of the public body to separate the exempt and nonexempt material and to make the nonexempt material available for examination if it is "reasonably possible" to do so while preserving the confidentiality of the exempt material. ORS

---

[1] ORS 192.420 provides:

"Every person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS 192.500."

[2] ORS 192.500(2)(a) provides:

"The following public records are exempt from disclosure under ORS 192.410 to 192.500:

"(a) Communications within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to any final agency determination of policy or action. This exemption shall not apply unless the public body shows that in the particular instance the public interest in encouraging frank communication between officials and employes of public bodies clearly outweighs the public interest in disclosure."

192.500(3); *Turner v. Reed,* 22 Or App 177, 186 n 8, 538 P2d 373 (1975). When a public body's failure to disclose is contested, the burden is on the public body to justify its action. ORS 192.490(1).

It is undisputed that the biologists' responses to defendant's questionnaire constitute communications within a public body and, at least in part, are advisory in nature and cover other than purely factual matters.[3] Accordingly, the

---

[3] Defendant distributed the questionnaire to the biologists in preparation for an annual meeting with the Oregon Department of Forestry. In the questionnaire, fish biologists were asked to rate the Forest Practices Act (FPA) as "very effective," "moderately," "marginally" and "minimally [effective]" with respect to "the following aspects of fish habitat on private timber lands": buffers/riparian habitat, protection of Class I streams, protection of Class II streams, maintenance of coarse, woody debris, deposition of sediment, turbidity prevention, prevention of log jams, removal of log jams, prevention of debris avalanches, stream restoration after debris avalanches, fish passage at culverts, maintenance of stream temperatures, and "other." The following additional question was asked of fish biologists:

"If a log jam forms as a result of an FPA rule violation, the [Forest Practice Forester] can write a repair order for the operator to remove the barrier to fish passage. However, if there is no violation, a repair order cannot be written. Our question is: 'How often do you get log jams that cannot be removed because no violation occurred? How many log jams from all sources required removal each year (on the average) in your district? How extensive do you consider log jams to be in your area?[']"

Wildlife biologists were asked to rate the effectiveness of the FPA with respect to snags, dead and down trees, old-growth habitat, big-game winter range, critical wildlife habitats per ODFW/DOF Cooperative Agreement, riparian habitat, forested wetlands and "other." Wildlife biologists were also asked:

"Has the green book *Wildlife Considerations in Forest Operations* been widely distributed to forest operators and managers?"

and

"How well is the book *Wildlife Considerations in Forest Operations* being implemented by operators?"

The following additional questions were asked of both fish and wildlife biologists:

"How often do you communicate, and how good is the cooperation with Forest Practices Foresters and District Foresters?"

"Do we need to inform FPF's more on fish and wildlife needs?"

"Are there fish and wildlife conflicts the FPA doesn't address?"

"Is your local judicial system sympathetic to a strong FPA program?"

"Have you documentation or data on positive or negative effects of forest practices?"

"Can you suggest how EMS could improve effectiveness on forestland issues?"

"What part, if any, of the FPA program needs to be changed?"

issues are first, whether, in this particular instance, the public interest in encouraging frank communication within a public body clearly outweighs the public interest in disclosure with respect to all or a portion of the biologists' responses that may otherwise be exempt from disclosure and, second, what steps defendant must take to separate the exempt material from the nonexempt to make the nonexempt material available for examination.

Plaintiff believes that the requested documents would be useful in carrying out its duties with respect to land use planning. Defendant, on the other hand, contends that disclosing the biologists' responses will have a "chilling effect" on the free flow of information and opinions within the agency. It also contends that the public interest in disclosure is minimal in light of a summary of the responses that it prepared and furnished to plaintiff and other interested parties. Defendant acknowledges, however, that plaintiff's interest in obtaining copies of the responses is "legitimate." For that reason, one can only wonder why the parties were unable or unwilling to come to an agreement that would have been satisfactory to both while dispensing with the need for costly litigation at public expense. Instead, defendant adopted an all or nothing approach, making no effort of which we know to provide plaintiff with the purely factual portions of the responses.

We conclude, initially, that the public interest in the disclosure of public records cannot be satisfied by the "disclosure" of a summarizing document, regardless of whether a summary satisfies the individual need of the requesting party. As we said in *Turner v. Reed, supra:*

> "[T]he policy that permeates the disclosure statutes and legislative history is that disclosure decisions should be based on balancing those *public* interests that favor disclosure of governmental records against those *public* interests that favor governmental confidentiality, with the presumption always being in favor of disclosure." 22 Or App at 187. (Emphasis supplied.)

The publication of a mere summary simply produces one more document that is subject to disclosure; it does not lessen the public interest in disclosure of the material summarized or increase the public interest in encouraging frank discussion.

■    We have examined the biologists' individual responses and adhere to our original holding that the presumption favoring disclosure outweighs any evidence to the contrary.[4] Because we hold that with respect to the responses in their entirety we need not decide what steps defendant would otherwise have to take to separate exempt material from nonexempt material. Any "chilling effect" that disclosure may have on future communications within the agency, because of potential embarrassment to the agency or its employes, is not sufficient, in and of itself, to overcome the presumption favoring disclosure. *See, e.g., Turner v. Reed, supra.* To hold otherwise would effectively exempt from disclosure all interagency communications that are advisory in nature and cover other than purely factual matters.

Petition for reconsideration allowed; former opinion adhered to.

---

[4] Although it is not dispositive, we note that defendant did not solicit the biologists' responses on the basis of their confidentiality. *See, e.g.,* ORS 192.500(2)(c).